FREE FERTILITY FOUNDATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 17122–07X.                    Filed July 7, 2010.

P, a nonprofit corporation founded by S, provides S's sperm free of charge to women seeking to become pregnant through artificial insemination or in vitro fertilization. S and his father, F, are P's board members and officers. S and F ultimately determine to whom P will distribute sperm. P, seeking tax exemption as a private operating foundation pursuant to sec. 501(c)(3), I.R.C., contends that it operates exclusively for the charitable purpose of promoting health.

1. *Held*: P's activities do not promote health for the benefit of the community.

2. *Held*, *further*, pursuant to sec. 501(c)(3), I.R.C., P is not operated exclusively for exempt purposes and therefore does not qualify for tax exemption.

*Marcus S. Owens* and *Nancy Ortmeyer Kuhn*, for petitioner.

*Philip T. Hackney* and *Michael B. Blumenfeld*, for respondent.

OPINION

FOLEY, *Judge*: Pursuant to section 7428(a),[1] petitioner seeks a declaratory judgment that it meets the requirements of section 501(c)(3) and is exempt from Federal income taxation. This case was submitted for decision based on the stipulated administrative record as defined in Rule 210(b)(12). Petitioner has exhausted its administrative remedies as required by section 7428(b)(2) and Rule 210(c)(4), received a final adverse determination letter dated June 15, 2007, and invoked the jurisdiction of this Court by a petition filed July 31, 2007.

*Background*

William C. Naylor, Jr. (Naylor), is a software engineer who holds more than 10 patents on various inventions. On March 1, 2001, Naylor entered into a contract (2001 contract) with a Spokane, Washington, sperm bank to store and distribute his sperm to recipients of his choice. Pursuant to the 2001 contract, Naylor was required to pay annual storage fees and designate recipients.

On October 15, 2003, Naylor founded and incorporated petitioner in California as a nonprofit public benefit corporation. The purpose of the corporation is to provide sperm free of charge to women seeking to become pregnant through artificial insemination or in vitro fertilization. Petitioner advertises online through a search engine and a Web site.

On February 6, 2004, petitioner submitted to respondent Form 1023, Application for Recognition of Exemption, in which petitioner seeks tax-exempt status as a private operating foundation. On April 11, 2005, respondent requested a copy of petitioner's agreement with the sperm bank that stored its donated sperm. In response to the request petitioner, on May 31, 2005, submitted Naylor's 2001 contract.

Petitioner's Web site states that Naylor is its "single sperm donor" and chronicles Naylor's life from infancy to adulthood. Naylor's donor profile includes photographs, a physical description, health information, family history, and achievements. In particular, the Web site provides great detail of Naylor's academic and athletic accomplishments during

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

elementary school (e.g., spelling bee competition), junior high school (e.g., science fair competition), high school (e.g., swimming competitions), and college (e.g., recognition as "top engineering student"). On the Web site Naylor states:

I derive meaning and happiness from believing that I am making the world a better place. Being a sperm donor is a way that I can help a few people to have children who otherwise could not. This makes more of a positive difference to the world than all of the inventions and scientific discoveries that I could ever create.

Petitioner's bylaws provide for a board consisting of 1 to 10 directors, all of whom shall be appointed by Naylor. None of the directors may be compensated. Naylor and his father, a retired university professor, are petitioner's board members and officers. Naylor's father is petitioner's president and chairman of the board. Naylor is petitioner's secretary, treasurer, and sole financial contributor. Petitioner's board of directors selects all sperm recipients.

Women seeking to receive sperm from petitioner are required to submit answers to a questionnaire created by Naylor and his father (collectively, the Naylors). The questions relate to the woman's family background, living environment, age, history of fertility treatment, educational attainment, personal achievements, and desire to have a child. Preference is given to women "with better education" and no record of divorce, domestic violence, or "difficult fertility histories" and are from families "whose members have a track record of contributing to their communities"; who are in "a traditional marriage situation"; who are under age 37; who are ethnic minorities; and who are "from locations where * * * [petitioner has] not previously accepted recipients." Petitioner scores the questionnaires by hand, transfers the information to a computer-readable form, and enters the information into a computer program which assigns a score to each woman. The threshold score required for a woman to receive sperm is adjusted so that the number of recipients accepted matches the number of sperm vials available. The Naylors are authorized to override a score to accept or reject anyone if, in their judgment, the computer program fails to account for a critical factor. In 2004 petitioner received 433 questionnaires and distributed sperm to 20 women. In 2005

petitioner received 386 questionnaires and distributed sperm to 4 women.

On November 30, 2005, respondent sent petitioner a proposed exemption denial letter. Petitioner, on March 30, 2006, submitted a written protest. The parties held a conference on November 28, 2006, to discuss petitioner's application for exemption. On June 15, 2007, respondent issued a final determination letter denying petitioner's request for exemption. On July 31, 2007, petitioner, a California corporation, filed its petition with this Court seeking review of the final determination.

## *Discussion*

Pursuant to section 501(a), organizations described in section 501(c)(3) are exempt from Federal income taxation. Section 501(c)(3) organizations include:

Corporations * * * organized and operated exclusively for religious, charitable, * * * or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation * * *, and which does not participate in, or intervene in * * *, any political campaign * * *.

The requirement that a corporation be operated exclusively for exempt purposes is referred to as the "operational" test. See sec. 1.501(c)(3)–1(c), Income Tax Regs. To meet the requirements of the operational test, an organization must engage primarily in activities that accomplish exempt purposes, and no more than an insubstantial part of the organization's activities may be in furtherance of a nonexempt purpose. Sec. 1.501(c)(3)–1(c)(1), Income Tax Regs. An organization is not operated exclusively for exempt purposes unless it serves a public rather than a private interest. [2] Sec. 1.501(c)(3)–1(d)(1)(ii), Income Tax Regs.

Respondent contends that petitioner does not, pursuant to section 501(c)(3), operate exclusively for exempt purposes and therefore is not entitled to tax exemption. More specifically, respondent contends that petitioner's operations do not promote health or otherwise serve a charitable purpose. Peti-

---

[2] We need not and do not decide whether sec. 7491(a)(1) applies to a declaratory judgment action. The applicability of sec. 7491(a)(1) does not impact the outcome of this case.

tioner contends that it operates exclusively to promote health by providing free health products and services.

Section 501(c)(3) identifies a number of exempt purposes, including "charitable" purposes. The term "charitable" is used in its generally accepted legal sense. Sec. 1.501(c)(3)–1(d)(2), Income Tax Regs. In particular, this Court has found that the promotion of health for the benefit of the community is a charitable purpose. *Redlands Surgical Servs. v. Commissioner*, 113 T.C. 47, 73 (1999), affd. 242 F.3d 904 (9th Cir. 2001). The promotion of health may be deemed beneficial to the community if the class of beneficiaries is sufficiently large to benefit the community as a whole. *Id.*; *Sound Health Association v. Commissioner*, 71 T.C. 158, 181–182 (1978) (citing 4 Scott, Trusts, sec. 372.2 (3d ed. 1967)); 2 Restatement, Trusts 2d, sec. 372, cmt. c (1959).

The free provision of sperm may, under appropriate circumstances, be a charitable activity. Petitioner, however, does not qualify for tax exemption because the class of petitioner's beneficiaries is not sufficiently large to benefit the community as a whole. Petitioner contends that "the class of individuals that could be direct beneficiaries of Petitioner is extremely large: all women of child-bearing age." To the contrary, the class of potential beneficiaries includes only the limited number of women who are interested in having one man—Naylor[3]—be the biological father of their children and who survive the very subjective, and possibly arbitrary, selection process controlled by the Naylors.[4] Over a 2-year period, petitioner received 819 inquiries and provided sperm to 24 women. In deciding who receives the sperm, petitioner has certain preferences that narrow the class of eligible recipients. It is not apparent what, if any, relationship some of these preferences have to the promotion of health. For example, petitioner prefers women "from families whose members have a track record of contributing to their communities" and women "with better education". Petitioner does

---

[3] The 2001 contract and both petitioner's Form 1023 and Web site indicate that Naylor is the only donor. On Mar. 31, 2005, however, there were 56 sperm vials available from two other donors. Petitioner's Web site states that 4 vials are required for a cycle of artificial insemination and that women typically require 20 cycles of artificial insemination (i.e., 80 sperm vials) to achieve pregnancy. Thus, the sperm provided by donors other than Naylor was not sufficient to complete a typical cycle of artificial insemination. Moreover, there is no evidence of these donors' involvement with petitioner before or after Mar. 31, 2005, nor is there evidence that these donors' vials were made available to the public.

[4] The Naylors have unfettered veto power in the selection process.

not provide medical care, research, education, or other services that advance or further health. Cf. 4 Scott, Trusts, sec. 372 (3d ed. 1967) (noting the types of organizations that promote health). In addition, petitioner's questionnaire fails to inquire about any health-related issues, and petitioner's board members and officers (i.e., the Naylors) do not have health-related education or expertise. Simply put, petitioner's activities may promote the propagation of Naylor's seed and population growth, but they do not promote health for the benefit of the community.

As the Supreme Court has recognized: "Charitable exemptions are justified on the basis that the exempt entity confers a public benefit". *Bob Jones Univ. v. United States*, 461 U.S. 574, 591 (1983). While Naylor may believe that petitioner's activities "make more of a positive difference to the world than all of the inventions and scientific discoveries that * * * [he] could ever create", we are not convinced that the distribution of one man's (i.e., Naylor's) sperm to a small number of women, selected in the manner presented, promotes health or confers a public benefit.[5] Accordingly, we find that petitioner is not operated exclusively for exempt purposes and therefore does not qualify for tax exemption pursuant to section 501(c)(3).

Contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

*Decision will be entered for respondent.*

---

[5] Petitioner does not contend, nor is there evidence, that it relieves the poor, distressed, or otherwise underprivileged.